FILED
DECEMBER 20, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**07 C 7166**

| | | |
|---|---|---|
| **MATTHEW MOORE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. _____ |
| | § | JUDGE_____ |
| **ASTRAZENECA** | § | **JUDGE GUZMAN** |
| **PHARMACEUTICALS, LP,** | § | **MAGISTRATE JUDGE SCHENKIER** |
| | § | |
| Defendant. | § | JURY DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff MATTHEW MOORE ("Plaintiff"),in his Original Complaint, complaining of ASTRAZENECA PHARMACEUTICALS, LP ("AstraZeneca" or "Defendant") and for cause of action would respectfully show unto the Court and the Jury the following:

### I.

### INTRODUCTION AND PARTIES

1. This is a civil action brought on behalf of Plaintiff regarding damages that were a result of his ingestion of Seroquel, which was manufactured, marketed, distributed and/or sold to Plaintiff, by AstraZeneca and/or AstraZeneca's representatives.

2. Plaintiff MATTHEW MOORE is a resident of McHenry, McHenry County, Illinois.

3. AstraZeneca is a foreign limited partnership incorporated in the State of Delaware with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850-5437. AstraZeneca is duly authorized to conduct business in the State of Illinois but does not maintain a registered agent for service in the State of Illinois. Service of process upon AstraZeneca may be

accomplished by serving its registered agent CT Corporation System, 1800 Concord Pike, Wilmington, DE 19850-5437. AstraZeneca does business by agent in Illinois and, upon information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed Seroquel in Illinois.

4.  At all times relevant herein, AstraZeneca was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing pharmaceuticals and other products, including Seroquel, for use by the mainstream public and, more specifically, Plaintiff.

## II.

## JURISDICTION

5.  This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a resident of McHenry, McHenry County, Illinois, and Defendant is a Delaware corporation with its principal place of business in the State of Delaware.

## III.

## FACTUAL BACKGROUND

6.  In 1997, AstraZeneca obtained approval from the U.S. Food and Drug Administration (hereinafter the "FDA") to market Seroquel for treatment of adults with schizophrenia. In 2004, Seroquel was approved by the FDA for short-term treatment of acute manic or mixed episodes associated with Bipolar I Disorder.

7.  AstraZeneca's own pre-clinical studies regarding its atypical anti-psychotic drug ingested by Plaintiff, and medical literature related to anti-psychotic drugs dating to the 1950's

demonstrate that Seroquel, and other anti-psychotics, cause weight gain and hyperglycemia.

8. On September 11, 2003, the FDA informed AstraZeneca that due to an increasing prevalence of diabetes-related illnesses associated with Seroquel, all labeling must bear the following language in the Warnings section:

> Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical anti-psychotics. Assessment of the relationship between atypical anti-psychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical anti-psychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical anti-psychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical anti-psychotics are not available.
>
> Patients with an established diagnosis of diabetes mellitus who are started on atypical anti-psychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical anti-psychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical anti-psychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical anti-psychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical anti-psychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

9. Despite the FDA's mandate that AstraZeneca immediately warn of the dangers described above, AstraZeneca waited an additional six (6) months, until January 30, 2004, to send prescribing physicians a "Dear Doctor Letter" advising of the new warnings. Further, the foregoing

warning did not appear in the Physicians' Desk Reference until the 2005 edition.

10. Under applicable statutes and regulations, the manufacturer of a prescription drug regulated by the FDA may not promote or market the use of the drug for purposes or in dosages other than those approved by the FDA. Uses of a prescription drug for purposes other than those approved by the FDA are referred to as "off-label" uses. Promotion by a drug manufacturer of "off-label" uses of prescription drugs is strictly illegal and contrary to the explicit policies and regulations of the United States Government.

11. Upon information and belief, AstraZeneca promoted Seroquel by employing the illegal direct solicitation of physicians for off-label uses and making false statements to physicians and pharmacists concerning the efficacy and safety of Seroquel for off-label uses. As a result of AstraZeneca's illegal schemes, Plaintiff was prescribed Seroquel for unnecessary and off-label uses.

12. There is no valid scientific evidence to support the contention that Seroquel is safe and effective for treatment of any off-label use, including any use in children. There is no valid scientific evidence concerning the therapeutic equivalence of Seroquel for any off-label use, including any use in children.

13. AstraZeneca did business in the State of Illinois, made contracts to be performed in whole or in part in Illinois, and/or manufactured, tested, sold, offered for sale, supplied or placed in the stream of commerce, or in the course of business, materially participated with others in so doing, Seroquel. AstraZeneca knew Seroquel to be defective, unreasonably dangerous, and hazardous, and AstraZeneca knew Seroquel would be substantially certain to cause injury to persons within the State. AstraZeneca thereby negligently and intentionally caused injury to persons within Illinois, and as described herein, committed and continues to commit tortious and other unlawful acts in the State of Illinois.

14. AstraZeneca sold or aided and abetted in the sale of Seroquel, which was, and is, defective and unreasonably dangerous. At all pertinent times, AstraZeneca knew, or should have known, that Seroquel was, and is, hazardous to human health.

15. AstraZeneca, through its funding and control of certain studies concerning the effects of its atypical anti-psychotic drug ingested by Plaintiff on human health, control over trade publications, promoting, marketing, and/or through other agreements, understandings and joint undertakings and enterprises, conspired with, cooperated with and/or assisted in the wrongful suppression, active concealment and/or misrepresentation of the true relationship between Seroquel and various diseases, all to the detriment of the public health, safety and welfare.

16. Specifically, and in addition to the allegations above, AstraZeneca knew of the hazards associated with Seroquel, affirmatively and actively concealed information which clearly demonstrated the dangers of its atypical anti-psychotic drug ingested by Plaintiff, and affirmatively misled the public and prescribing physicians with regard to the material and clear risks of Seroquel. AstraZeneca did so with the intent that prescribing physicians would continue to prescribe its atypical anti-psychotic drug ingested by Plaintiff because they knew that prescribing physicians would not be in a position to know the true risks of Seroquel. AstraZeneca also knew that prescribing physicians would rely upon the misleading information that AstraZeneca promulgated.

17. At all pertinent times, AstraZeneca purposefully and intentionally engaged in these activities, and continues to do so, knowing that when the general public, including Plaintiff, use Seroquel as AstraZeneca intended, those Seroquel-ingesting individuals would be substantially certain to suffer disease, injury and sickness.

18. The statements, representations and promotional schemes publicized by AstraZeneca were deceptive, false, incomplete, misleading, and untrue. AstraZeneca knew, or should have known, that its statements, representations and advertisements were deceptive, false, incomplete,

misleading, and untrue at the time of making such statements. AstraZeneca had an economic interest in making such statements. Each of the statements, representations and advertisements were material to Plaintiff's purchase of Seroquel in that Plaintiff would not have purchased the drug if he had known that AstraZeneca's statements, representations and advertisements were deceptive, false, incomplete, misleading, and untrue.

19. Plaintiff had a right to rely upon the representations of AstraZeneca and was directly and proximately injured by such reliance, all as described above.

20. Had Plaintiff been adequately warned of the potentially life-threatening side effects, Plaintiff could have chosen to request other prescription medications and avoided Seroquel's potentially life-threatening side effects.

21. Plaintiff was prescribed Seroquel by his physicians starting on approximately August 22, 2002. While on Seroquel, Plaintiff has experienced significant weight gain. Plaintiff was diagnosed with diabetes on or about December 21, 2005.

## IV.

## ALLEGATIONS

22. AstraZeneca negligently, recklessly and wantonly failed to warn Plaintiff, and the general public, of the risks associated with taking Seroquel. AstraZeneca failed to do so even after various studies, including its own, demonstrated the risks of diabetes and diabetes-related injuries associated with Seroquel.

23. AstraZeneca endeavored to deceive Plaintiff, and the general public, by not disclosing the findings of the various studies, including its own, that revealed concerns of the dangers of Seroquel.

24. Further, AstraZeneca did not provide warnings and instructions that would have put Plaintiff, and the general public, on notice of the dangers and adverse effects caused by Seroquel.

25. AstraZeneca designed, manufactured, distributed, sold and/or supplied Seroquel into the stream of commerce in a defective and unreasonably dangerous condition, taking into consideration the utility of Seroquel and the risk to Plaintiff and the general public.

26. Seroquel, as designed, manufactured, distributed, sold and/or supplied by AstraZeneca, was defective as marketed due to inadequate warnings, instructions and/or labeling.

27. Seroquel, as designed, manufactured, distributed, sold and/or supplied by AstraZeneca, was defective due to inadequate testing before and after AstraZeneca's knowledge of the various studies, including its own, evidencing the rightful concerns over the risks of diabetes and diabetes-related injuries associated with Seroquel.

## V.

## DISCOVERY RULE & FRAUDULENT CONCEALMENT

28. The nature of Plaintiff's injuries and their relationship to Seroquel use were inherently undiscoverable. Consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or, through the exercise of reasonable care and diligence, should have known, of the existence of Plaintiff's claims against Defendant. Plaintiff did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, his injuries earlier.

29. Further, Plaintiff did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendant's tortuous conduct. Under appropriate application of the "discovery rule," Plaintiff's suit was filed well within the applicable statutory limitations period.

30. Defendant is estopped from asserting a statute of limitations defense because it fraudulently concealed from Plaintiff the nature of Plaintiff's injury and the connection between the injury and Seroquel.

## VI. CAUSES OF ACTION

### COUNT I.

### PRODUCT LIABILITY VIOLATION

31. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

32. Plaintiff, at trial of this cause, will show by at least a preponderance of the evidence that Seroquel was and is, at the times Plaintiff has consumed the drug (since approximately August 22, 2002), defective in design or formulation, and this defect was a proximate cause of Plaintiff's diabetes onset, diagnosed on or about December 21, 2005.  As such, Plaintiff is entitled to damages from AstraZeneca relating to his diabetes diagnosis.

33. Plaintiff, at trial of this cause, will show by at least a preponderance of the evidence that Seroquel was and is, at the times Plaintiff has consumed the drug (since approximately August 22, 2002), defective due to inadequate warnings or instructions, and this defect was a proximate cause of Plaintiff's diabetes onset, diagnosed on or about  December 21, 2005.   As such, Plaintiff is entitled to damages from AstraZeneca relating to his diabetes diagnosis.

**A.     Seroquel Defective in Design/Formulation**

34. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

35. Seroquel was defective in design or formulation in that, when it left the hands of AstraZeneca and/or its representatives, the foreseeable risks associated with its design or formulation exceeded the benefits associated with its design or formulation.

36. The abundance of the foreseeable risks of Seroquel is supported by:

   a) Plaintiff's inability to understand and know of the risks of diabetes when he was ingesting Seroquel prior to his diabetes diagnosis on or about December 21, 2005, as even his prescribing physician was not armed with adequate warnings from AstraZeneca;

   b) The high likelihood, as now supported by AstraZeneca's warnings subsequent to Plaintiff's initial ingestion of Seroquel, that the design or formulation of Seroquel would cause Plaintiff to develop diabetes, in light of Plaintiff's intended and reasonably foreseeable Seroquel use; and

   c) The large extent to which Seroquel's design or formulation was and is, at the times Plaintiff has consumed the drug, more dangerous than Plaintiff and other reasonably prudent consumers would expect when using Seroquel in its intended or reasonably foreseeable manner.

37. Additionally, AstraZeneca did not provide adequate warnings and instructions regarding the foreseeable risks of Seroquel, as it concealed and failed to timely disclose to the FDA and consumers such as Plaintiff what it knew to be the foreseeable risks of weight gain, hyperglycemia, and diabetes following the intended and reasonably foreseeable use of Seroquel.

38. Plaintiff was diagnosed with diabetes following his ingestion of Seroquel, on or about December 21, 2005. The defective design and/or formulation of Seroquel by AstraZeneca was a direct and proximate cause of the injuries to and monetary losses of Plaintiff.

**B.     Seroquel Defective Due to Inadequate Warnings/Instructions**

39.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

40.     AstraZeneca knew or should have known, for reasons including but not limited to its own clinical studies showing that Seroquel causes weight gain, hyperglycemia, and diabetes, that Plaintiff's, and other consumer's, use of Seroquel would involve risks of such weight gain, hyperglcyemia, and diabetes.  Plaintiff began Seroquel use on approximately August 22, 2002, gained significant weight while on the drug, and developed diabetes that was diagnosed on or about December 21, 2005.

41.     AstraZeneca failed to provide warnings or instructions relating to the risks of weight gain, hyperglycemia, and diabetes, although it knew or should have known of these risks.  A manufacturer exercising reasonable care would have provided warnings or instructions concerning these risks.

42.     Even after AstraZeneca provided some warnings or instructions relating to the risks of weight gain, hyperglycemia, and diabetes, these warnings were inadequate in that they were unlikely to reach Plaintiff and were insufficient in communicating the real and known risk of Seroquel.  Contrary to what a manufacturer exercising reasonable care would have provided, AstraZeneca did not provide clear and/or timely warnings to Plaintiff or to Plaintiff's and all other consumers' prescribing physicians.

43.     The risks, posed by Plaintiff's Seroquel use, of weight gain, hyperglycemia, and diabetes were not risks that were open, obvious, a matter of common knowledge, or otherwise easily determined by Plaintiff, as AstraZeneca had substantial control and knowledge of the studies

supporting and showing such risks, and it failed to provide such information to Plaintiff or to the FDA in a timely and adequate manner.

44. Plaintiff was diagnosed with diabetes following his ingestion of Seroquel, on or about December 21, 2005. The inadequate warnings and/or instructions regarding Seroquel by AstraZeneca was a direct and proximate cause of the injuries to and monetary losses of Plaintiff.

### COUNT II.

### VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT
*815 Ill. Comp. Stat. Ann. 510/1 et. seq.*

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

46. Plaintiff is an individual the Illinois Deceptive Trade Practices Act (*815 Ill. Comp. Stat. Ann. 510/1 et. seq.*) is intended to protect. AstraZeneca was, at the time of Plaintiff's ingestion of Seroquel (since approximately August 22, 2002) and at the time of Plaintiff's diabetes diagnosis (approximately December 21, 2005), and is, engaged in the business of designing, manufacturing, marketing, distributing pharmaceutical drugs, for sale to and use by consumers.

47. AstraZeneca committed wrongful acts, both knowingly and unconscionably, toward Plaintiff by engaging in conduct that created a likelihood of confusion or of misunderstanding, as follows:

    a) AstraZeneca represented that Seroquel was a safe and effective drug when, in fact, it was not; and

    b) AstraZeneca failed to disclose to Plaintiff the information it had acquired regarding the serious risks involved with ingesting Seroquel. Had Plaintiff been given the benefit of AstraZeneca's knowledge and disclosure, Plaintiff would not have ingested Seroquel.

48. As the producing cause and legal and direct result of the wrongful acts committed by the Defendant both knowingly and unconscionably, Plaintiff, through his diabetes diagnosis on or about December 21, 2005, following the start of his Seroquel use, has suffered and continues to suffer injuries and monetary damages and is entitled to compensation for such.

## COUNT III.

### FRAUD

49. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

50. AstraZeneca fraudulently represented to the general public, as well as healthcare professionals, that Seroquel was a safe and effective drug. AstraZeneca made this representation while knowing that, if healthcare professionals and consumers knew of the serious risks associated with the ingestion of Seroquel, they would not prescribe and/or ingest this drug.

51. AstraZeneca knew its representations were false, and Plaintiff relied on AstraZeneca's false representations in his ingestion of Seroquel.

52. Plaintiff was diagnosed with diabetes on or about December 21, 2005, following his ingestion of Seroquel starting in approximately August 22, 2002. The fraudulent representations by AstraZeneca were a proximate cause of the injuries to and monetary losses of Plaintiff.

## COUNT IV.

### NEGLIGENCE

53. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

54. AstraZeneca and its representatives are merchants or sellers of Seroquel. AstraZeneca had a duty to the general public to exercise reasonable care in the design, manufacturing, marketing,

sale, testing and/or distribution of this drug into the stream of commerce. AstraZeneca failed to exercise ordinary care in the design, manufacturing, marketing, sale, testing, and/or distribution of Seroquel into interstate commerce.

55. Despite the fact that AstraZeneca knew, or should have known, that Seroquel could cause unreasonable injuries, i.e. weight gain, hyperglcyemia, and diabetes, to Plaintiff and the general public, AstraZeneca continued to market, distribute, and/or sell Seroquel to Plaintiff.

56. AstraZeneca knew, or should have known that consumers, such as Plaintiff, would suffer serious injuries such as weight gain, hyperglycemia, and diabetes due to, but not necessarily limited to, AstraZeneca's substantial control over studies regarding these risks. Moreover, after AstraZeneca became aware of the serious risks of ingesting Seroquel, it owed a legal duty to Plaintiff, and the general public, to disclose and adequately warn regarding that knowledge. AstraZeneca breached that duty by not providing timely and adequate warnings. Any warnings AstraZeneca put out were not timely to prevent Plaintiff's ingestion of Seroquel, nor were they strong by disclosing the true magnitude of the risks. AstraZeneca's breach of duty to disclose this information was a proximate cause of the injuries to Plaintiff.

57. Plaintiff was diagnosed with diabetes on or about December 21, 2005, following his ingestion of Seroquel since approximately August 22, 2002. The above-described acts and/or omissions of Defendant were a direct and proximate cause of the severe, permanent and disabling diabetes and resulting damages to Plaintiff.

## COUNT V.

### NEGLIGENT MISREPRESENTATION

58. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

59. AstraZeneca, through its New Drug Application to the FDA and through its active marketing of Seroquel, represented to Plaintiff that Seroquel leaving AstraZeneca's control to go out into the market was and is safe and effective.

60. Ingestion of Seroquel is now known, including via studies substantially controlled by AstraZeneca, to involve risks of weight gain, hyperglcyemia, and diabetes.

61. Plaintiff ingested Seroquel while relying upon AstraZeneca's misrepresentation that Seroquel was safe and effective, and not knowing of the risks of weight gain, hyperglycemia, and diabetes.

62. Plaintiff was diagnosed with diabetes on or about December 21, 2005, following his ingestion of Seroquel since approximately August 22, 2002. The negligent representations by AstraZeneca were a proximate cause of the injuries to and monetary losses of Plaintiff.

## COUNT VI.

### BREACH OF EXPRESS WARRANTY
*810 Ill. Comp. Stat. Ann.* **5/1-101** *et. seq.*

63. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

64. AstraZeneca, through its individual agents, is a "seller" as defined by the Illinois Uniform Commercial Code (*810 Ill. Comp. Stat. Ann. 5/2-103*).

65. Plaintiff is a "buyer" as defined by the Illinois Uniform Commercial Code (*810 Ill. Comp. Stat. Ann. 5/2-103*).

66. AstraZeneca, by presenting its New Drug Application to the FDA, thereby

representing to the FDA and, consequently, to Plaintiff that Seroquel was safe, expressly warranted to Plaintiff that Seroquel use did not involve inherent risks during foreseeable use, including risks of weight gain, hyperglycemia, and diabetes.

67. Ingestion of Seroquel is now known, including via studies substantially controlled by AstraZeneca, as involving risks of weight gain, hyperglcyemia, and diabetes.

68. Plaintiff ingested Seroquel while relying upon AstraZeneca's express warranty that Seroquel was safe and effective, and not knowing of the risks of weight gain, hyperglycemia, and diabetes.

69. Plaintiff was diagnosed with diabetes on or about December 21, 2005, following his ingestion of Seroquel since approximately August 22, 2002. The breach of express warranty by AstraZeneca was a proximate cause of the injuries to and monetary losses of Plaintiff.

## COUNT VII.

### BREACH OF IMPLIED WARRANTIES
*810 Ill. Comp. Stat. Ann. 5/1-101 et. seq.*

70. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

71. AstraZeneca, through its individual agents, is a "seller" as defined by the Illinois Uniform Commercial Code (*810 Ill. Comp. Stat. Ann. 5/2-103*). The fraudulent representations by AstraZeneca were a proximate cause of the injuries to and monetary losses of Plaintiff.

72. Plaintiff is a "buyer" as defined by the Illinois Uniform Commercial Code (*810 Ill. Comp. Stat. Ann. 5/2-103*).

**A.  Warranty of Merchantability.**

73. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

74.     AstraZeneca is additionally a "merchant" with respect to goods of the kind that Seroquel is, i.e. a pharmaceutical drug, as defined by the Illinois Uniform Commercial Code (*810 Ill. Comp. Stat. Ann. 5/2-104*) because it deals in pharmaceutical goods and/or otherwise holds itself out as having knowledge or skill peculiar to pharmaceutical goods.

75.     Seroquel manufactured by AstraZeneca and ingested by Plaintiff were not merchantable, as they were not fit for the ordinary purposes for which such pharmaceuticals are used because they pose dramatically significant risks of weight gain, hyperglycemia, and diabetes thereby outweighing the potential benefits marketed to Plaintiff.

76.     Seroquel manufactured by AstraZeneca and ingested by Plaintiff were not merchantable, as they were not adequately contained, packaged, and labeled to represent that they pose dramatically significant risks of weight gain, hyperglycemia, and diabetes thereby outweighing the potential benefits marketed to Plaintiff.

77.     Plaintiff ingested Seroquel while relying upon AstraZeneca's implied warranties of merchantability that Seroquel was and is fit for its ordinary purpose and adequately contained, packaged, and labeled.

78.     Plaintiff was diagnosed with diabetes on or about December 21, 2005, following his ingestion of Seroquel since approximately August 22, 2002. The breach of implied warranty by AstraZeneca was a proximate cause of the injuries to and monetary losses of Plaintiff.

**B.     Warranty of Fitness.**

79.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges the following:

80. AstraZeneca, at the time Plaintiff initially ingested Seroquel in May 2002, had reason to know that Plaintiff and other consumers were seeking a drug for the specific purpose of control of certain symptoms and conditions, including the potential and foreseeable use of inducing sleep.

81. As AstraZeneca is a seller of pharmaceutical drugs and as AstraZeneca is the party with substantial control over the studies regarding the safety and efficacy of its Seroquel, Plaintiff relied upon AstraZeneca's skill and judgment to furnish Seroquel as a suitable drug for certain foreseeable purposes.

82. AstraZeneca breached its implied warranty of fitness because ingestion of Seroquel is now known, including via studies substantially controlled by AstraZeneca, as involving risks of weight gain, hyperglycemia, and diabetes.

83. Plaintiff ingested Seroquel while relying upon AstraZeneca's implied warranty of fitness that Seroquel was safe and effective, and not knowing of the risks of weight gain, hyperglycemia, and diabetes.

84. Plaintiff was diagnosed with diabetes on or about December 21, 2005, following his ingestion of Seroquel since approximately August 22, 2002. The breach of implied warranty of fitness by AstraZeneca was a proximate cause of the injuries to and monetary losses of Plaintiff.

## VII.

## DAMAGES

85. Upon the trial of this case, it will be shown that Plaintiff was caused to sustain serious injuries and damages as a proximate result of Defendant's conduct. Plaintiff will respectfully request the Court and Jury to determine the amount of the loss Plaintiff has incurred in the past and will incur in the future.

## VIII.

## PUNITIVE DAMAGES

86.　At all times relevant hereto, AstraZeneca actually knew of the defective nature of Seroquel as set forth herein and continued to design, manufacture, market, distribute and/or sell Seroquel so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by Seroquel. AstraZeneca's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill-will, recklessness, and/or willful and intentional disregard for the safety and rights of Plaintiff, as well as the general public and/or consumers of Seroquel. Plaintiff, therefore, is entitled to punitive damages.

## IX.

## JURY DEMAND

87.　Plaintiff hereby requests a trial by jury on all issues in this case.

## X.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that Defendant be cited to appear and answer herein and that upon final trial of this cause, Plaintiff have judgment against Defendant for compensatory, punitive and/or statutory damages as awarded by the jury, plus interest, prejudgment and post-judgment, reasonable attorneys' fees, filing fees and reasonable costs of court as provided by law, and, for such other and further legal and equitable relief as this Honorable Court deems just and proper.

        Respectfully submitted,

        /s/ Kent M. Lucaccioni
        Kent M. Lucaccioni
        KENT M LUCACCIONI LTD
        20 South Clark St., Suite 1700
        Chicago, IL 60603
        (312) 425-0401
        (312) 263-0128 (Facsimile)


OF COUNSEL:

Howard L. Nations
THE LAW OFFICES OF HOWARD L NATIONS
4515 Yoakum Blvd.
Houston, Texas 77006-5895
(713) 807-8400
(713) 807-8423 (Telecopier)

Admission Pro Hac Vice Pending